U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 MAY -9 PM 2:48

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:11-cr-101 |
| | ) | |
| MICHAEL E. MEE | ) | |

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT
(Doc. 23)

This matter comes before the court on Defendant Michael E. Mee's motion to dismiss the Indictment on the basis that the Indictment is unconstitutional as applied to him. (Doc. 23.) The Government opposes the motion. The parties have waived oral argument.

The one-count Indictment charges Defendant as follows:

> Beginning in or about February 2010, and continuing until the present, in the District of Vermont and elsewhere, the defendant, MICHAEL EDWARD MEE, a person required to register under the Sex Offender Registration and Notification Act, having traveled in interstate commerce, did knowingly fail to register, and update his registration, as a sex offender.
>
> (18 U.S.C. § 2250(a))

(Doc. 1.)

Defendant challenges the constitutionality of the Indictment, arguing (1) punishing him under the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a), violates the ex post facto clause of the Constitution, particularly because Vermont has not implemented SORNA; (2) application of SORNA to him violates his due process rights; (3) application of SORNA to him violates the Commerce Clause; (4) SORNA impermissibly encroaches upon state power in violation of the Tenth Amendment; (5) SORNA violates the non-delegation doctrine in terms of the authority it

delegates to the Attorney General; and (6) the Attorney General's interim rule (the "Interim Rule") violated the Administrative Procedures Act (the "APA").

The Government is represented by AUSA Barbara A. Masterson. Defendant is represented by Federal Public Defender Michael L. Desautels.

I. **Factual Background.**

The following facts are undisputed for purposes of the pending motion and are gleaned from a February 10, 2011 affidavit submitted by Sheri Englert. Ms. Englert is the Coordinator of the Vermont Sex Offender Registry at the Vermont Criminal Information Center ("VCIC"), Department of Public Safety, in Waterbury, Vermont.

On September 29, 1993, Defendant was convicted in Rutland, Vermont of sexual assault, a conviction that requires Defendant to register as a sex offender in Vermont. On December 24, 1996, Defendant signed the "Vermont Sex Offender Registry Notification of Requirement to Register" form, which specifies his responsibility under SORNA to report any changes to his address.[1] Defendant's registration materials were entered into the Vermont Sex Offender Registry on January 23, 1997.

On February 9, 2007, Defendant reported a physical and mailing address of 133 Grove Street, Room B, Rutland, Vermont. On January 19, 2010, Ms. Englert mailed via first class U.S. mail an Annual Address Verification letter to Defendant at the foregoing address. On January 25, 2010, the verification letter was returned by the U.S. Postal Service as Return to Sender, indicating a mailing address for Defendant of 1643 Franklin Street, Brandon, Vermont.

On January 26, 2010, Ms. Englert sent a second Annual Address Verification letter to Defendant at the Brandon address. As of February 10, 2010, Defendant had not

---

[1] In particular, the form notified Defendant that (1) he "must notify [his] caseworker of any change of address within 24 hours of the change for as long as [he was] being supervised in the community by the Vermont Department of Corrections;" (2) he "must notify VCIC about [his] change of address" if he intends to move to another state and, in addition, "must register with the Sex Offender Registry in the new state within three days of moving there;" and (3) "[a]t least once a year [he would] receive a letter from VCIC verifying [his] current address . . . [and he] must complete the form and return it to VCIC within 10 days." (Doc. 24-2 at 1.)

2

returned the Annual Address Verification letter, nor had the U.S. Postal Service returned the letter as undeliverable or address unknown. On May 30, 2011, Defendant was arrested in Connecticut for operating a motor vehicle under the influence of drugs or alcohol, operating a motor vehicle with a valid out-of-state license beyond thirty days of residing in Connecticut, possession of drug paraphernalia, and possession of marijuana.

## II. Conclusions of Law and Analysis.

Each of Defendant's challenges to the Indictment is grounded in his argument that SORNA is unconstitutional as applied to him. Accordingly, the court examines first the language and history of SORNA as well as the provenance of the Interim Rule and the Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") Guidelines before turning to Defendant's specific challenges. With regard to the latter, Defendant concedes that a number of his arguments have already been rejected by the Second Circuit or are otherwise foreclosed by binding precedent.

### A. SORNA, the Attorney General's Interim Rule, and the SMART Guidelines.

SORNA, which was enacted on July 27, 2006, seeks to "protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. It was designed to "track the interstate movement of sex offenders," *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009), and requires sex offenders to provide notice to state governments of their current name and location for inclusion in sex offender registries. SORNA states that:

> Whoever
> (1) is required to register under the Sex Offender Registration and Notification Act . . .
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

Individuals who have initially registered or who are otherwise required to register under SORNA must keep their registration current by notifying their reporting jurisdictions of any changes in name, address, employment, or student status within three business days. 42 U.S.C. § 16913(c).

On February 28, 2007, the Attorney General published the Interim Rule which purported to make SORNA requirements "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act." 28 C.F.R. § 72.3. The Attorney General relied on the "good cause" exception in the APA to make the Interim Rule effective immediately and to render inapplicable the requirements for advanced publication, public comment, and agency response. The Attorney General further stated that the Interim Rule makes it "indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted[.]" 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. pt. 72).

On May 30, 2007, the Attorney General issued proposed SMART Guidelines which were designed to assist jurisdictions in implementing SORNA's regulations. 72 Fed. Reg. 30210. The SMART Guidelines, which purport to apply SORNA's requirements retroactively, provide that a jurisdiction will not be deemed to have implemented SORNA until it "carries out the requirements of SORNA as interpreted and explained in these Guidelines." 72 Fed. Reg. 30213-14. On July 2, 2008, the Attorney General issued the finalized SMART Guidelines, and on May 26, 2009, issued a one-year extension for jurisdictions to implement SORNA. Vermont has not fully implemented the SORNA's regulations.

### B. Whether SORNA's Application Violates the Ex Post Facto Clause.

Because his 1993 Vermont conviction predates the enactment of SORNA, Defendant contends SORNA's application to him violates the ex post facto clause. The Government counters that Defendant's alleged offense occurred after SORNA was adopted because his interstate travel and the failure to register occurred in February of

2010. As a result, the Government asserts the ex post facto clause is not implicated in this case.

Where application of a statute "punishes as a crime an act previously committed, which was innocent when done," or "makes more burdensome the punishment for a crime, after its commission," or "deprives one charged with crime of any defense available according to law at the time when the act was committed," it violates the ex post facto clause. *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir. 1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)); U.S. CONST. art. I, § 9, cl. 3.

According to the Second Circuit, when an individual travels in interstate commerce and fails to register or update his or her sex offender registry information after the effective date of the regulations, that individual violates SORNA. *See United States v. Guzman*, 591 F.3d 83, 94 (2d Cir. 2010). In *Guzman*, the Second Circuit noted that the defendants' interstate travel and failure to register occurred after SORNA's enactment and after the effective date of the regulations. Because the defendants had notice of registration requirements, they could have complied with both state and federal law by registering. *Id.* Thus, "[t]here [was] . . . no ex post facto problem with [defendants'] convictions." *Id.*

In this case, as in *Guzman*, Defendant's failure to register and subsequent travel across state lines occurred after SORNA was enacted and after it became effective as to pre-Act offenders. It also occurred after Defendant had notice of his registration requirements. Defendant is thus not being prosecuted for an offense he committed prior to the criminalization of his conduct by SORNA, nor is he exposed to a more burdensome punishment or deprived of a defense that existed at the time his crime was allegedly committed. The Indictment therefore does not violate the ex post facto clause.

Defendant's further argument that he has alleged an ex post facto deprivation because Vermont has not fully implemented the SORNA regulations, thus making his compliance impossible, is equally unavailing. As the Second Circuit has observed, "compliance with SORNA is not 'impossible' in light of the fact that the states at issue had a registration program," *United States v. Hester*, 589 F.3d 86, 93 (2d Cir. 2009), as

5

did Vermont. Indeed, the *Guzman* court rejected a virtually identical challenge to Defendant's based upon the lack of SORNA implementation by New York, Massachusetts, and Virginia and concluded "SORNA creates a federal duty to register with the relevant existing state registries regardless of state implementation of the specific additional requirements of SORNA." *Guzman*, 591 F.3d at 93. Where a defendant "could have updated his registration information" in a state that has a state registration program but has not implemented SORNA, the failure of that state to implement SORNA "does not excuse [defendant's] failure to meet the registration requirements that SORNA imposes on individual sex offenders to register with the programs that [do] exist." *Hester*, 589 F.3d at 93.

## C. Whether SORNA's Application Violates the Due Process Clause.

Defendant next argues that application of SORNA to the facts and circumstances of his case violates his due process rights because the notice to register he received from Vermont contained insufficient notice of his alleged federal obligation to register under SORNA. In response, the Government contends Defendant had adequate notice of his obligation to register as a sex offender in Vermont, as evidenced by his registering in Vermont for many years prior to his moving to Connecticut.

In *Hester*, the Second Circuit held the defendant's prosecution under § 2250(a) did not violate his rights to due process in part because "ignorance of the law is not a valid defense to a criminal prosecution." *Hester*, 589 F.3d at 91. Following other circuits,[2] the Second Circuit has similarly concluded that merely because defendant "had no actual notice of SORNA is not sufficient to render his prosecution pursuant to that statute a violation of his due process rights." *Id.* at 92. The court additionally determined that defendant's failure to register did not fall within the limited exception to the general rule that ignorance of the law is not a valid defense to its violation. *Id.* (citing *Lambert v. California*, 355 U.S. 225 (1957)).

---

[2] *See, e.g., United States v. Brown*, 586 F.3d 1342, 1351 (11th Cir. 2009); *United States v. Whaley*, 577 F.3d 254, 262 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459, 468-69 (4th Cir. 2009).

6

Consequently, the fact that Defendant did not receive specific notice of SORNA is not sufficient to render his prosecution for failure to register as a sex offender under § 2250(a) a violation of his due process rights. *See Hester*, 589 F.3d at 93 ("The fact that [defendant] did not receive notice of SORNA is not sufficient to render his prosecution for failure to register as a sex offender under 18 U.S.C. § 2250(a) a violation of his due process rights.").

### D. Whether SORNA Violates the Commerce Clause.

Arguing SORNA impermissibly regulates the acts of individuals convicted of purely local sex offenses, Defendant contends SORNA violates the Commerce Clause by failing to satisfy any standard by which Congress may permissibly regulate commerce. The Second Circuit has rejected this constitutional challenge, holding "§ 2250(a) is a proper congressional exercise of the commerce power." *Guzman*, 591 F.3d at 90.[3] This court is bound to deny Defendant's commerce clause challenge in accordance with this precedent.

### E. Whether SORNA Violates the Tenth Amendment.

In reliance upon the Tenth Amendment's prohibition of federal use of state officials for enforcement of federal laws, Defendant argues that SORNA represents an unlawful compulsion of state and local law enforcement to enforce federal law. In

---

[3] The federal government's enumerated powers under the United States Constitution include the power to "regulate Commerce . . . among the several States," and to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Power[.]" U.S. CONST. art. I, § 8, cl. 3, 18. Although the power to regulate commerce "may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution," *Gibbons v. Ogden*, 22 U.S. 1, 75 (1824), commerce that does not extend to or affect other states is outside the reach of the Commerce Clause. *Id.* at 74; *United States v. Lopez*, 514 U.S. 549, 553 (1995). In *Lopez*, the Supreme Court identified three broad categories of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities having a substantial relation to interstate commerce." *Id.* at 558-59. Congress limited the criminal enforcement of § 2250(a) to those individuals who knowingly fail to register or to update a registration only when they have traveled in interstate commerce. *See* 18 U.S.C. § 2250(a). It thus confined its exercise of the commerce power to activities recognized as within that power by *Lopez*.

particular, Defendant cites those who operate state sex offender registries and aid in the federal registration of sex offenders.

As the Government points out, the two circuit courts that have considered this argument have concluded SORNA does not violate the Tenth Amendment.[4] The court finds this authority persuasive.

The Tenth Amendment states "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. Pursuant to this constitutional grant of reserved powers to the states, the federal government may not commandeer state officials for the purpose of enacting or administering a federal statute. *Printz v. United States*, 521 U.S. 898, 935 (1997).

In this case, however, Defendant has not shown that Congress commandeered any of Vermont's law enforcement officials in violation of the Tenth Amendment. He has not established that Vermont officials have been required to do anything under SORNA which they were not already obligated to do under Vermont's sex offender registry laws, namely, to collect registration information from individuals convicted of Vermont sex offenses who are residents of Vermont. In the absence of evidence of compelled state enforcement of SORNA, Defendant's Tenth Amendment challenge must fail. *See Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010) (finding no Tenth Amendment violation where defendant had "not demonstrated that the order requiring him to register as a condition of parole undertakes to obligate the State of Maryland or the Sheriff of Wicomico County" to enforce a federal regulatory program); *United States v. Herbert*, 2009 WL 4110472, at *7 (N.D.N.Y. Nov. 20, 2009) ("[B]ecause Defendant has not demonstrated that SORNA compelled New York or New Jersey to make changes to their

---

[4] *See, e.g., United States v. Smith*, 655 F.3d 839, 848 (8th Cir. 2011) (concluding defendant's Tenth Amendment challenge failed because SORNA did not force the states to comply with its directives); *Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010) (finding no Tenth Amendment violation because SORNA does not require states to implement its requirements).

sexual offender registries, [Defendant's] Tenth Amendment challenge must be rejected[.]").

### F. Whether SORNA's Delegation of Authority to the Attorney General Violates the Non-Delegation Doctrine.

Defendant next challenges the Attorney General's implementation of SORNA as a violation of the non-delegation doctrine, asserting that Congress unconstitutionally delegated its legislative authority to the Attorney General under § 16913, which grants the Attorney General the authority "to specify the applicability of the requirements of this chapter to sex offenders convicted before [SORNA's enactment]." 42 U.S.C. § 16913(d). This alleged delegation of authority, in turn, impermissibly allowed the Attorney General to legislate the scope of SORNA's retrospective reach.

The Constitution declares that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1. Nevertheless, the non-delegation doctrine "does not keep Congress from obtaining the assistance of its coordinate branches; it merely requires Congress to provide clear guidance and delineate the boundaries of delegated authority." *United States v. Van Buren, Jr.*, 2008 WL 3414012, at *15 (N.D.N.Y. Aug. 8, 2008).

Considering a broad interpretation of § 16913(d), the Second Circuit has concluded the Attorney General's authority under SORNA to either implement SORNA with respect to all sex offenders or to determine its retroactivity is adequately circumscribed by the regulations. *Guzman*, 591 F.3d at 93 (stating "[t]he Attorney General's authority under SORNA is highly circumscribed. SORNA includes specific provisions delineating what crimes require registration; where, when, and how an offender must register; what information is required of registrants; and the elements and penalties for the federal crime of failure to register.") (internal citations omitted). Indeed, it appears that Congress recognized that "combining the registry systems of 50 states presented 'precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate.'" *United States v. Sudbury*, 2012 WL 925960, at *3 (W.D. Wash. Mar. 19, 2012) (quoting *Mistretta v. United States*, 488 U.S. 361, 379

(1989)). "To exempt all pre-Act offenders, the Attorney General would have had to ignore Congress's mandate to create a comprehensive system. This principle is sufficiently intelligible to limit the Attorney General's discretion." *Sudbury*, 2012 WL 925960, at *3.

Because "Congress's delegations under SORNA possess a suitable 'intelligible principle' and are 'well within the outer limits of [the Supreme Court's] nondelegation precedents," *United States v. Felts*, 2012 WL 762977, at *5 (6th Cir. Mar. 12, 2012) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001)), § 16913(d) does not offend the principles of the non-delegation doctrine.

### G. Whether the Attorney General's Interim Rule Applying SORNA to All Sex Offenders Violates the APA.

Finally, Defendant argues that the Attorney General's February 28, 2007 Interim Rule, 28 C.F.R. § 72.3, which "appl[ies SORNA's requirements] to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act," violates the APA. He contends the Interim Rule violated the APA by failing to provide for public notice and a comment period. In addition, Defendant asserts that the Attorney General erroneously relied on the "good cause" exception of the APA, which allows agencies to forego notice and comment where it is "impractical, unnecessary, or contrary to the public interest" in issuing the Interim Rule. 5 U.S.C. §553(b)-(c).

The Government contends that Defendant's argument fails because his SORNA offense took place in the beginning of 2010, after the Attorney General's 2008 final rule replaced the Interim Rule. It points out that even courts that have held that the Attorney General's Interim Rule was ineffective to retroactively apply SORNA to pre-Act offenders have concluded that SORNA nevertheless became effective with respect to pre-Act offenders as of August 1, 2008, which was thirty days after the publication of the final SMART Guidelines. *See United States v. Stevenson*, 2012 WL 573326, at *6 (6th Cir. Feb. 23, 2012) ("[T]he SMART guidelines can and do have the force and effect of law, and they establish that SORNA became retroactive as of August 1, 2008."); *United*

10

States v. Valverde, 628 F.3d 1159, 1169 (9th Cir. 2010) ("SORNA did not become effective against pre-enactment offenders like [defendant] until August 1, 2008, thirty days after publication of the final SMART guidelines along with the Attorney General's response to comments."); United States v. Cotton, 760 F. Supp. 2d 116, 132 (D. D.C. 2011) ("This Court agrees with the reasoning of the Sixth and Ninth Circuits, under which the interim rule is invalid and SORNA did not become effective until August 1, 2008, thirty days after the final SMART guidelines were issued.").[5]

Here, the court need not determine whether the Attorney General's Interim Rule violated the APA because the Indictment charges Defendant with conduct allegedly violating SORNA that occurred from February 2010 until the present. Accordingly, even if the Interim Rule is invalid, Defendant's alleged SORNA violation occurred well after the Attorney General's SMART Guidelines became effective on August 1, 2008. Every court that has considered a challenge to the Interim Rule in the context of a post-SMART Guidelines offense has concluded that a valid SORNA offense has been alleged.

## CONCLUSION

For the reasons stated above, the court hereby DENIES Defendant's motion to dismiss the Indictment. (Doc. 23.)

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 9th day of May, 2012.

Christina Reiss, Chief Judge
United States District Court

---

[5] In Reynolds v. United States, 132 S. Ct. 975, 984 (2012), the United States Supreme Court concluded that SORNA's registration requirements "do not apply to pre-Act offenders until the Attorney General so specifies." Reynolds thus abrogated a series of cases such as United States v. Fuller, 627 F.3d 499, 501 (2d Cir. 2010), wherein the Second Circuit concluded that "SORNA applie[s] upon enactment to sex offenders . . . whose predicate sex offense convictions predate SORNA." The Reynolds Court, however, did not reach the question of whether the Attorney General's Interim Rule set forth a valid specification and remanded the case for further proceedings. Reynolds, 132 S. Ct. at 984.

11